IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

SCOTT SMOLIAK,

    Plaintiff,

vs.                                CASE NO.: 5:04cv245-SPM/AK

GREYHOUND LINES, INC.,
a foreign corporation and
STEPHEN PECHAWER,

    Defendants.

_____/

## ORDER QUASHING SUBPOENA

This cause comes before the Court on the objections (doc. 59) filed by the Tallahassee Democrat, Inc. and reporter Jeff Burlew to the Magistrate Judge's September 9, 2005 order (doc. 55) denying their motion to quash a subpoena. At issue is whether the reporter's privilege, codified at § 90.5015, Fla. Stat., protects Burlew from being a witness concerning his eyewitness observations of Plaintiff, Scott Smoliak, on matters relevant to this case. If so, a further issue is whether Defendants have made a sufficient showing to overcome the privilege.

**I.    STANDARD OF REVIEW**

A district court judge may reconsider pretrial matters that have been referred to a magistrate judge "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

Under this standard, the court will affirm the magistrate judge's order unless the court has a definite and firm conviction that error has occurred. Linea Navira De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A., 169 F.Supp.2d 1341, 1355 (M.D. Fla. 2001); Nugent v. Hercules Offshore Corp., 1999 WL 1277536 at *1 (E.D. La. Dec. 28, 1999).

## II. THE PRIVILEGE

The Court's jurisdiction in this case comes from diversity of citizenship, so the substantive law of the state of Florida applies. Accordingly, issues concerning the privilege of a witness are governed by Florida law. Fed. R. Evid. 501.

Under Florida law, reporters enjoy a qualified privilege from being a witness in a case. The privilege is codified at section 90.5015, Florida Statutes, which provides in relevant part:

> A professional journalist has a qualified privilege not to be a witness concerning, and not to disclose the information, including the identity of any source, that the professional journalist has obtained while actively gathering news. This privilege applies only to information or eyewitness observations obtained within the normal scope of employment and does not apply to physical evidence, eyewitness observations, or visual or audio recording of crimes. A party seeking to overcome this privilege must make a clear and specific showing that:
>
> (a) The information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought:
>
> (b) The information cannot be obtained form alternative sources; and
>
> (c) A compelling interest exists for requiring disclosure of the

information.

§ 90.5015(2), Fla. Stat.

The statute contains several requirements, but the parties do not dispute that Jeff Burlew is a "professional journalist." Nor do they dispute that Burlew was actively gathering news or within the normal scope of his employment when he made the observations of Plaintiff. Instead, the parties' argument concerns whether the privilege is applicable to eyewitness observations.

In finding that the reporter's privilege did not apply, the magistrate judge relied upon the Florida Supreme Court's opinion in Miami Herald Publ'g Co. v. Morejon, 561 So. 2d 577 (Fla. 1990). In Morejon, the Florida Supreme Court stated "that there is no privilege, qualified, limited, or otherwise, which protects journalists from testifying as to their eyewitness observations of a relevant event in a subsequent court proceeding." Id. at 580.

While the wording used in the opinion is broad and makes no distinction between civil and criminal cases, several factors indicate that the holding in Morejon is limited to criminal matters. For example, Morejon was a criminal case and many of the cases cited therein were cases in which news reporters were required to testify about criminal activity that the news reporters observed. See id. at 581. In a later opinion, the Florida Supreme Court stated that, in accordance with its opinion in Morejon, "the privilege *does not* apply to eyewitness observations . . . of a crime." State v. Davis, 720 So. 2d 220, 227 (Fla. 1998). The court explained that "[a]lthough a defendant's rights to

compulsory and due process . . . were not discussed in Morejon . . . those rights are significant factors that are implicated whenever a defendant seeks to discover information relevant to the charges against the defendant." The wording of the privilege statute itself, furthermore, expressly provides that the "privilege applies . . . [to] eyewitness observations obtained within the normal scope of employment" but qualifies that it "does not apply to physical evidence, eyewitness observations, or visual or audio recording of crimes." § 90.5015, Fla. Stat. (emphasis added).  Based on the foregoing, the Court finds that the privilege applies to the eyewitness observations at issue in this case as there is no indication that Burlew observed Plaintiff committing a crime.

**II.     OVERCOMING THE PRIVILEGE**

A party seeking to overcome the privilege must show that "(1) the reporter possesses relevant information; (2) the same information is not available from alternative sources; and (3) the movant has a compelling need for any information the reporter may have." Davis, 720 So. 2d at 227.

With respect to relevancy, the magistrate judge correctly found that Burlew's information is relevant.  Plaintiff in this case is seeking damages for injuries he suffered as a passenger in a bus accident on December 4, 2000. Plaintiff claims that the accident caused him severe pain that kept him in bed, unable to move some days, and forced him to drop out of pre-med classes. Burlew's information concerns his observations of Plaintiff at a party before Florida State University's first home game in 2002.  Burlew wrote an article which

included the following observations of Plaintiff, Scott Smoliak:

> Most FSU fans broke out their picnic goodies and began home game celebrations after Saturday morning showers gave way to cloudy skies.
> But FSU students Nick Crossman, Scott Smoliak, and Mark Spizer got their party started early.  They said they had been drinking beer since just after noon on Friday.
> "If Florida State is half as good as we are drunk, we will win the national championship," reasoned Smoliak, a pre-med junior.

These observations of Plaintiff made two years after his alleged permanent injuries are relevant to Plaintiff's claim for damages for loss of enjoyment of life.  Furthermore, the observations are indicative that Plaintiff was able to attend football games and enjoy his college experience, which Plaintiff's vocational rehabilitation expert admitted would have an impact on his conclusions about Plaintiff's future employment possibilities.

On the questions, however, of Defendants' compelling need for the information and ability to obtain the information from other sources, Defendants have not made a sufficient showing to overcome the privilege.  Defendants argue that there are no disinterested witnesses who observed Plaintiff at the pre-game party and that they are unable to obtain the information from other sources.  Defendants, however, have not actually deposed Nick Crossman or Mark Spiser, who according to the article were with Plaintiff at the pre-game party.  Defendants speculate that those witnesses would not be helpful, but without actually questioning these witnesses it is difficult to determine exactly what they know or whether they could identify others who observed Plaintiff on the day in question.

As for compelling need, the observations at issue represent just one day in Plaintiff's life.  At least some of the observations are covered by Plaintiff's own deposition testimony.  Plaintiff admitted in his deposition that he attended games and could drink six or seven beers in one episode.  Although Plaintiff stated during his deposition that he did not remember what he said to Burlew, he did not deny making the statement and he did not deny being at the pre-game party.

Furthermore, Defendants apparently have evidence that after the accident, Plaintiff completed "hell week" at school and had a girlfriend.   Doc. 64, ex. G.  There is also some indication that Plaintiff was working at Procida Tile, a business owned by his uncle, in 2003, thus contradicting Plaintiff's statements that he did not work at Procida Tile until 2005.  All of this other evidence is probative of Plaintiff's credibility and Plaintiff's claims concerning his loss of enjoyment of life.  Although Defendants may benefit from having the additional testimony of Jeff Burlew, they have not demonstrated a compelling need that is sufficient to overcome the reporter's privilege.  Accordingly, it is

ORDERED AND ADJUDGED that the subpoena issued to Jeff Burlew is quashed.

DONE AND ORDERED this 17th day of October, 2005.

_s/ Stephan P. Mickle_
Stephan P. Mickle
United States District Judge