## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**SCOTT SMOLIAK,**

    **Plaintiff,**

v.                                       **CASE NO. 5:04-cv-00245-RS-AK**

**GREYHOUND LINES INC,**
**STEPHAN PECHAWER,**

    **Defendants.**

_____/

### CERTIFICATION OF FACTS FOR A FINDING OF CONTEMPT

Plaintiff brings this cause of action alleging that Defendants were negligent in the operation of a Greyhound Bus, which resulted in an accident on December 4, 2000, and bodily injuries to the Plaintiff. (Doc. 1). Defendants have stipulated that they will not contest liability leaving only the issues of causation and damages for trial. (Doc. 50).

Pursuant to 28 U.S.C. §636 (e)(6)(B)(iii), in such cases where the district judge has assigned pretrial matters to the magistrate judge and acts pertaining to these matters are deemed to constitute civil contempt:

> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be held in contempt by reason of the facts so certified.

At issue is non-party Brett Cormier, a relative and employer of the Plaintiff, who has consistently failed to comply with Orders of this Court, thereby causing the Court unnecessary time and effort and time and expenses for the Defendants in obtaining discovery to which they are clearly entitled. Also at issue is Cormier's obstructiveness

with regard to the taking of his deposition, which was finally taken, but only after considerable and unnecessary effort and expense by Defendants.

Defendant first moved to compel records from Brett Cormier on October 19, 2005. (Doc. 82). At issue were a number of documents Cormier was requested by subpoena duces tecum to bring with him to his deposition, which was held on October 7, 2005. He failed to bring them, and despite assurances from his attorney, George Ord, that the documents were forthcoming, none had been received. The document request was for all documents pertaining to Plaintiff Scott Smoliak, including monthly sales reports for 2004 and January 2005. In response, Cormier argued that the motion to compel should be filed in the Southern District of Florida because the document request was made in a subpoena duces tecum, which should have been issued from that court. (Doc. 96). However, Cormier conceded that he agreed to appear at his deposition and bring these records, despite the problems with the subpoena, and further conceded that his appearance was based on this agreement, not the subpoena.[1]

Based on this representation, the Court granted Defendant's motion on November 17, 2005, (doc. 82), and ordered that Cormier produce all the documents his attorney had promised to produce and warned Cormier not to try the Court's patience any further. (Doc. 100).

On December 5, 2005, Defendants filed a Notice of Noncompliance, Motion for

---

[1] In a later pleading, Cormier referenced and attached a proposed Agreed Order, which set Cormier's deposition and memorialized their agreement that he would bring all employment records pertaining to Scott Smoliak. (Doc. 120). Although Cormier contends that the Agreed Order was never signed by the district judge, the undersigned has carefully reviewed the docket and can not find where any such order was submitted for signature.

Sanctions, and Request for Inspection, stating that they had yet to receive the 2004 monthly sales information and were told that computer problems prevented retrieval of this information. (Doc. 110). Defendants were also awaiting the sales information for January 2005, and a check register, which they had been told during the deposition of Greg Barlow showed checks written to Plaintiff. Defendants asked for sanctions and leave to send a computer technician to inspect the computer system to ascertain if he could assist in retrieval of the sales information. On December 16, 2005, the Court issued an Order to Show Cause directing that Cormier show cause why a hearing for contempt should not be set before District Judge Smoak for his failure to comply with Orders of this Court. (Doc. 118). Cormier responded that all documents requested had been produced, including a sales report for 2004, but that the check register, according to Steve Boccio, Chief Financial Officer of Procida Tile, did not exist. He did not address the January 2005 sales information.

On January 23, 2006, when there had been no further response or opposition by Defendant to the representations made by Cormier in his response, the Court deemed the issue moot, but awarded sanctions to Defendants for their fees and expenses incurred in filing the motion (doc. 110). (Doc. 135). Defendants then moved for reconsideration stating that the sales report for January 2005 had never been produced, the sales report for 2004 was not broken down by month, and Steve Boccio was not the person who had testified about the check register, it was Greg Barlow who identified the check register during his deposition. (Doc. 139). Thus, Defendants again asked that a computer technician be employed to attempt to generate the 2004 sales information by month, and that the January 2005 report be produced, and that some explanation be

given for why the check register disappeared.

After consideration of Defendant's motion and the exhibits attached thereto, the Court granted reconsideration, vacated its previous order (doc. 135), and ordered that Cormier file an Affidavit "explaining what documents he has in his possession, custody or control, that contain the specific information about Scott Smoliak sought by Defendants -- his dates of employment and salary information for the years 2004 and 2005. (Doc. 140). The Court added that if this information was not able to be generated from the computer at Procida Tile because of "computer problems," then Cormier should identify these problems, who had been contacted to correct these problems, dates of service of these problems, when these problems were expected to be corrected, and when the information would be produced. Cormier was also ordered to either produce this information on or before April 7, 2006, or identify in his affidavit what other sources he would use to compile this information, such as a statement from his accountant, personal or business tax returns, personal or business bank records, or whatever, and produce these records to Defendants on or before April 7, 2006. (Doc. 140). The Court also ordered that Greg Barlow file an affidavit addressing the check register he says he used to write checks to the Plaintiff and to specifically address his use of the register and any knowledge he had regarding its disappearance or the contention of Steve Boccio that it never existed. The Court also stated:

> The Court is still reluctant to order an inspection of Cormier's computer, at his expense, to obtain this information since it seems an extreme, expensive, and unnecessarily invasive process to obtain what should be relatively easy information about Plaintiff's income. However, Cormier must be more cooperative in producing the limited information requested of him or the Court may be left with no other option. Plaintiff has made claims in this lawsuit, and Defendants are entitled to develop proof of his

>employment and income during the years 2004 and 2005 in an effort to defend those claims. Work history and salary information is simple, straightforward information that every reputable business maintains in a variety of easily retrievable formats, and the Court simply does not accept the representations heretofore made for why Brett Cormier cannot locate this information. This issue is getting tiresome and has occupied far too much of this Court's time and energy.

Cormier responded with his affidavit and a number of copies of check stubs and banking activity sheets. (Doc. 142). Greg Barlow also filed an affidavit concerning the check register, copies of which he attached reflecting the checks written to the Plaintiff.

Defendants replied that they are unable to decipher much of the information provided to them, they still have not been furnished January 2005 information, the check registers provided by Barlow do not include 2004 through January 2005, and the information pertains to base pay not sales. (Doc. 144). Thus, Defendants request leave to depose the computer technician to see what efforts have been made to retrieve the 2004 monthly sales breakdown, leave to re-depose Barlow to ask him to explain the information already submitted, and some means for making Cormier explain why he has no other records from which he could glean this information. Defendants also seek sanctions for all their efforts to obtain this information.

Indeed, the Court directed Cormier to "identify in his affidavit what other sources he will use to compile this information such as a statement from his accountant, personal or business tax returns, personal or business bank records, or whatever, and he shall produce these records to Defendants on or before April 7, 2006." In his sworn Affidavit, Cormier stated that "[h]e has no other documents in his possession, custody, or control, containing employment or salary information for Scott Smoliak other than

cash disbursement journals, which will be provided to counsel for defendants on or before April 7, 2006." (Doc. 142, Affidavit). A member of the Court's staff has contacted counsel for Cormier, who contends that the cash disbursement journal pages were in fact attached to Cormier's affidavit, and Defendants have been contacted and advise that no other documents have been produced since the filing of Cormier's response and affidavit.[2]

Also at issue is Defendants' Motion to Show Cause and for Sanctions Against Non-party Brett Cormier (doc. 27), which was only recently referred to the undersigned, but is additional support for a finding of contempt by Cormier. At issue in that motion was the taking of Cormier's deposition originally scheduled for March 29, 2005. The parties attempted amicably and upon agreement to schedule Cormier's deposition, which Cormier canceled **four** times. Finally, after he canceled two days before the last scheduled opportunity to depose him prior to mediation of this case, he was subpoenaed on July 15, 2005, for a videotaped deposition scheduled for July 28, 2005, at Cormier's place of business. Defendants drove to Cormier's place of business in Palm Beach County with the court reporter and videographer and were told that he would not be videotaped because it was against his religion.[3] Plaintiff responded to the motion to assert that Cormier would agree to the deposition, but would not be video taped, again asserting his "religious" objections. (Doc. 35). An agreement was reached

---

[2] Additional information is being obtained from the computer technician, whom Cormier avers in his affidavit serviced his computer and was unable to correct the problems with the 2004 information. It may be discovered that Cormier misrepresented facts in his affidavit about his efforts to use this technician.

[3] Cormier claimed that videotaping violated his "religion" as an American Indian.

*Case No: 5:04-cv-00245-RS-AK*

between Defendants and Cormier and his deposition was taken, but not without considerable time, effort and expense on their part, as well as that of the Court's time and effort. Insofar as the merits of this motion are concerned, it is moot since the deposition was finally taken. However, the issue of sanctions is pertinent to the present issue of contempt and should be addressed at the hearing.

After certifying the above facts to the district judge, which the undersigned represents support a finding of contempt by Brett Cormier, the following additional recommendations are made. If the district judge finds that Brett Cormier is indeed in civil contempt for failing to obey orders issued from this Court: (1) Cormier should be ordered to produce the monthly sales break down for the Plaintiff for 2004 and January 2005; (2) Defendants should file an Affidavit of Fees and Expenses incurred by them as to **all** the motions, responses, and other papers filed in their efforts to obtain the sales information from Mr. Cormier and as to all their fees and expenses incurred in obtaining his deposition, and as to all their fees and expenses incurred in preparing for and attending the contempt hearing; and (3) that if it is determined at the hearing that depositions must be taken in order to compile this information or explain or clarify the sales information, Cormier should also be levied with those costs as well.

If it is determined at the hearing that Cormier has made false statements in his Affidavit, the issue of perjury should be addressed and referred to the United States Attorney for possible investigation and further action.

If the district judge determines that counsel for Mr. Cormier is at fault in whole or in part in ignoring the Orders of this Court, he should consider levying all or part of the sanctions described above against the attorney, pursuant to 28 U.S.C. §1927, which

authorizes sanctions against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously."

Finally, there is presently pending before the Court a motion to dismiss this action based on allegations of fraud and spoilation of evidence and a motion to strike Plaintiff's claims for lost wages. (See Docs. 28 and 61). The findings of the district judge as to the issues of contempt presented herein should be considered in conjunction with those motions and, if the district judge agrees with the facts certified herein, his findings should be deemed additional support for the relief sought in those motions.

**DONE AND ORDERED** this 19th day of April, 2006

**s/ A. KORNBLUM**
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**